UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 22-cv-23135-BLOOM/Torres**

CHAUNDRA HORNSBY,
*as guardian of T.K., a minor,*

      Plaintiff,

v.

CARNIVAL CORPORATION,
*d/b/a/ Carnival Cruise Lines,*

      Defendant.

_____/

**OMNIBUS ORDER ON MOTION TO STRIKE, MOTION *IN LIMINE*, AND
MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon three separate Motions. (1) Defendant Carnival

Corporation ("Defendant") filed a Motion for Summary Judgment, ECF No. [39] ("Motion for

Summary Judgment"); Plaintiff Chaundra Hornsby ("Plaintiff") filed a Response in Opposition,

ECF No. [48], to which Defendant filed a Reply, ECF No. [56]. (2) Defendant filed a Motion to

Strike/*Daubert* Motion to Exclude Opinions from Plaintiff's "Hybrid" Witnesses, Dr. Charles M.

Myer ("Dr. Myer"), Dr. Michael A. DeMarcantonio ("Dr. DeMarcantonio") and Dr. Ryan Collar

("Dr. Collar"), ECF No. [35] ("Motion to Strike"); Plaintiff filed a Response in Opposition, ECF

No. [46], to which Defendant filed a Reply, ECF No. [54]. (3) Defendant filed an Omnibus

Motion *in Limine*, ECF No. [36] ("Motion *in Limine*"); Plaintiff filed a Response in Opposition,

ECF No. [45], to which Defendant filed a Reply, ECF No. [53]. The Court has considered the

Motions, all opposing and supporting submissions,[1] the record, the relevant law, and is otherwise

_____

[1] In support of its Motion for Summary Judgment, Defendant filed an Amended Statement of
Undisputed Material Facts, ECF No. [41] ("SMF"). Plaintiff filed a Response to Defendant's SMF and

full advised. For the reasons that follow, Defendant's Motion for Summary Judgment is denied, Defendant's Motion to Strike is denied, and Defendant's Motion *in Limine* is granted in part and denied in part.

## I.     BACKGROUND

Plaintiff initiated this maritime personal injury action against Defendant on September 27, 2022. ECF No. [1] ("Complaint"). Plaintiff brings this action on behalf of her minor son, T.K., in her capacity as his mother and natural guardian. *See id.* ¶ 2.  The Complaint alleges three claims: direct liability for the negligent operation of a stage show ("Count I"), negligent failure to warn ("Count II"), and vicarious liability for the negligent operation of a stage show ("Count III"). *See generally id.*

On October 16, 2019, Plaintiff and T.K. were passengers aboard Defendant's ship, *M/S Victory*. Plaintiff alleges that on that date, T.K. participated in the interactive "Dr. Seuss" stage show, during which Defendant's crewmember "sprayed a wet, foreign, or transitory substance into the air as an effect in the show." Complaint ¶ 14. "As a result, portions of the stage became contaminated with the wet, foreign, or transitory substance." *Id.* Plaintiff alleges that "[s]everal minutes after the substance was sprayed onto the stage, a crewmember instructed several minor children, including the Plaintiff, T.K., to run in a circle on the stage[]" and that "[a]s a result, the Plaintiff [T.K.] came into contact with the wet, foreign, or transitory substance on the floor and fell, sustaining serious injuries." *Id.* ¶ 15.

In its Summary Judgment Motion, Defendant requests that the Court grant summary judgment on all three counts. Defendant argues that it is entitled to summary judgment because (1) there is no evidence that Defendant proximately caused T.K. to slip and fall; (2) Plaintiff

Additional Facts in Opposition to Summary Judgment ("SAMF"), ECF No. [47]. Defendant filed a Reply Statement of Material Facts and Response to Plaintiff's Additional Facts ("RSAMF"), ECF No. [55].

failed to provide any admissible medical causation evidence; (3) there is no evidence that the stage area constituted a dangerous condition; and (4) Defendant had no actual or constructive knowledge of any allegedly dangerous condition. *See* Motion for Summary Judgment. Plaintiff takes the opposing positions and responds that (1) there is substantial evidence that Defendant proximately caused T.K. to slip and fall; (2) Plaintiff's medical causation evidence is admissible; (3) there is substantial evidence that the stage area constituted a dangerous condition; and (4) there is substantial evidence that Defendant had actual or constructive notice of the dangerous condition. *See generally* ECF No. [48].

Plaintiff intends to call Dr. Charles M. Myer ("Dr. Myer"), Dr. Michael A. DeMarcantonio ("Dr. DeMarcantonio") and Dr. Ryan Collar ("Dr. Collar") as "hybrid" witnesses. In its Motion to Strike, Defendant contends that Plaintiff's expert disclosures for Dr. Myer, Dr. DeMarcantonio, and Dr. Collar are insufficient.[2] *See generally* Motion to Strike. Defendant also challenges the scope of Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's testimony and argues that their opinions are unreliable and unhelpful. *Id.*

Defendant's Motion *in Limine* argues that Plaintiff should be precluded from offering evidence or testimony regarding (1) unrelated prior marine incidents or accidents; (2) the total billed amounts for T.K.'s medical expenses; (3) references to the Parties' financial resources; and (4) comments or suggestions that the jury should "send a message" to Defendant. *See generally* Motion *in Limine*. Defendant also contends that Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's testimony must be limited or excluded because it is cumulative. *Id.*

---

[2] Defendant also argues that Dr. Myer's rebuttal report must be stricken.

## II.    STATEMENT OF MATERIAL FACTS

Based on the Parties' briefings[3] and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

Plaintiff and minor T.K. were passengers onboard the Carnival *Victory* on October 16, 2019.[4] SMF ¶ 1; SAMF ¶ 1. On October 16, 2019, T.K. participated in the Dr. Seuss interactive stage show ("Stage Show") in the Caribbean Lounge onboard the Carnival *Victory*. SMF ¶ 1; SAMF ¶ 1. During the Stage Show, a crewmember sprayed water into the crowd from the rear of the stage. ECF Nos. [37], [40].[5] It is disputed whether some of this water hit the stage area.[6] T.K. subsequently slipped and fell while running across the stage. *See* ECF No. [40]. The Parties dispute whether T.K. was instructed to run across the stage by a crewmember.

Defendant's Daily Security Summary Watch Report from October 16, 2019 provides that "[t]he mother of injured minor guest [T.K.] … stated that … [T.K.] slipped on wet floor & fell forward on the stage hitting his face onto the floor." ECF No. [47-1] at 1. Defendant's communication to the United States Coast Guard that same day also reports that "[w]hen

---

[3] Defendant filed an initial Statement of Undisputed Material Facts with its Motion for Summary Judgment, ECF No. [38]. As noted above, Defendant subsequently filed an Amended Statement of Undisputed Material Facts, ECF No. [41], referenced herein as "SMF". The Court accordingly relies on Defendant's Amended Statement of Undisputed Materials Facts as the operative filing. However, the Court references the exhibits attached to Defendant's initial Statement of Undisputed Material Facts, as Defendant did not separately file those documents with its Amended Statement of Undisputed Materials Facts. *See generally* ECF No. [38].

[4] For clarity, the Court refers to Plaintiff Chaundra Hornsby as "Plaintiff" and refers to her son T.K. as "T.K."

[5] Defendant conventionally filed two videos depicting the Stage Show with the Court. The Court accordingly cites to Defendant's Notices of Conventional Filing, ECF Nos. [37], [40], when referencing those videos.

[6] Defendant argues that Plaintiff fails to properly dispute Defendant's SMF by failing to use the words "disputed" or "undisputed" at several points in her SAMF, and by failing to "clearly challenge" Defendant's asserted facts. *See generally* RSAMF (citing L.R. S.D. Fla. 56.1(a)(2), (b)(1)(B)-(2)(A)). Although Defendant is correct that Plaintiff fails to begin some of her responses with "disputed" or "undisputed" in violation of Local Rule 56.1(b)(2)(B), the Court will not deem Defendant's SMF as undisputed on this basis. The Court will instead consider facts as disputed to the extent they are "clearly challenge[d]" by Plaintiff's SAMF. *See* L.R. S.D. Fla. 56.1(a)(2).

inquired, mother of injured minor [Plaintiff] … stated that today (10/16/2019) … while he [T.K.] was running on the stage, wearing tennis shoes, he apparently slipped on wet floor & fell forward on the stage hitting his face onto the floor, thus sustain[ing] injury." ECF No. [47-2] at 1. Defendant's October 23, 2019 Accident Report Summary similarly observes that "[m]inor guest [T.K.] claimed that … he slipped on wet floor" during the show and describes the "Immediate Cause" of the accident as "[w]ater on floor spray by Staff. Part of activity[.]" ECF No. [47-3] at 3.

Plaintiff testified in her deposition that she was unsure whether she saw a crewmember spray water into the air during the Stage Show. ECF No. [38-1] at 154. She also was unsure where she was sitting during the Stage Show and whether she left the auditorium at any point during the Stage Show. *Id.* at 154-56. Plaintiff further testified that she did not know how much water was sprayed into the air, which crewmember sprayed the water, or whether any water hit the stage area. *Id.* at 157-58, 163. During his deposition, T.K. testified that he saw a crewmember spray water into the air, but that he "didn't see it hit the stage." ECF No. [38-2] at 59. T.K. did not see any water in the area of the stage where he fell, but he felt water on the stage after his fall. *Id.* at 65.

Defendant's corporative representative, Suzanne B. Vasquez ("Vasquez"), testified that she did not know "if [T.K.] was instructed to run" on the stage. ECF No. [38-4] at 10. When asked if Defendant disputes whether the stage was wet at the time of T.K.'s fall, Vasquez testified as follows:

> THE WITNESS: I don't think that it was wet, but it was probably a little bit damp. It looked like – I mean, you can see in the video that was produced by the other guest that most of the water is actually sprayed on the audience, but I guess the argument could be made that some of the water fell onto the stage but you can't really see any of the water on the stage.

> But T.K. testified that he felt like it was damp. He felt like
> his foot – when he slipped, that he felt water on his leg.

*Id.* at 10-11.

Plaintiff did not conduct a physical inspection of the stage area where T.K. fell, nor did Plaintiff retain a liability expert to test the floor's coefficient of friction when wet. SMF ¶ 19; SAMF ¶ 19. Defendant has conducted the Stage Show during every voyage on a fleet-wide basis in the three years prior to T.K.'s accident. ECF No. [38-4] at 75. No prior incidents were reported involving the Stage Show during that period. *Id.* at 49; ECF No. [38-6] at 3-4.

Plaintiff disclosed Dr. Myer, Dr. DeMarcantonio, and Dr. Collar as hybrid medical experts before the expert disclosure deadline. ECF No. [35-1]. Dr. Myer and Dr. DeMarcantonio opined that, within reasonable medical probability, T.K.'s fall during the Stage Show caused him to develop a deviated septum. *Id.* at 2. Dr. Collar opined that, within reasonable medical probability, T.K.'s respiratory symptoms following his initial septoplasty procedure were causally related to his fall during the Stage Show, and T.K. developed a deviated septum as a result. *Id.* at 3.

## III.   LEGAL STANDARD

### A. *Daubert* Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify

competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F.

Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making evidentiary determinations such as these. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005) (quoting *Frazier*, 387 F.3d at 1258).

### B. Expert Disclosures

Federal Rule of Civil Procedure 26 requires a party to disclose to the other parties the identity of any witness it may use at trial to present expert testimony. *See* Fed. R. Civ. P. 26(a)(2). To properly disclose a retained expert, parties must disclose an expert's identity "accompanied by a written report." *Id*. at Rule 26(a)(2)(B). If the witness is not required to provide a written report, the party must disclose the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions the witness is expected to testify to. *Id*. at Rule 26(a)(2)(C).

If a party violates Rules 26(a), Rule 37(c) provides for the exclusion of the expert evidence "unless the failure was substantially justified or is harmless." *See id.* at Rule 37(c)(1). The non-disclosing party bears the burden of showing that the failure to comply with Rule 26 was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). In making this determination, the Court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Torres v. First Transit, Inc.*, No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018) (citation omitted). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to

perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (citation omitted).

Ultimately, the "determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Smith v. Jacobs Eng'g Grp., Inc.*, No. 06-CV-496, 2008 WL 4264718, at *6 (N.D. Fla. Mar. 20, 2008), *report and recommendation adopted*, No. 06-CV-496, 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008) (citation omitted); *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13-CV-23074, 2014 WL 3764126, at *2 (S.D. Fla. July 30, 2014) (noting that a court has "great discretion in deciding whether to impose such a sanction" for failure to comply with expert witness disclosure requirements). Indeed, "[c]ourts have broad discretion to exclude untimely expert testimony—even when they are designated as 'supplemental' reports." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019).

### C. Motion *in Limine*

"In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig.*, Nos. 06-MD-1769, 07-CV-15733, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). Likewise, "[i]n light of the preliminary or preemptive nature of motions in limine, 'any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited.'" *Holder v. Anderson*, No. 16-CV-1307,

2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (quoting *Miller ex rel. Miller v. Ford Motor Co.*, No. 01-CV-545, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004)); *In re Seroquel Prod. Liab. Litig.*, 2009 WL 260989, at *1 ("The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*." (citing *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989))).

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. Fed. R. Evid. 401, 402; Advisory Comm. Notes, Fed. R. Evid. 401 ("The standard of probability under the rule is 'more probable than it would be without the evidence.'"); *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013). A district court may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Patrick*, 513 F. App'x at 886 (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011); *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010)). Rule 403's "major function … is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001).

### D. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P.

56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

## IV.   DISCUSSION

### A.   Motion to Strike

The Court first addresses Defendant's Motion to Strike Plaintiff's hybrid witnesses, Dr. Myer, Dr. DeMarcantonio, and Dr. Collar. Defendant argues that Plaintiff's hybrid witnesses must be excluded from providing expert medical testimony because Plaintiff's expert disclosures of those witnesses are deficient under Rule 26(a)(2). Alternatively, Defendant contends that Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's expert testimony should be excluded under *Daubert*

as unreliable and unhelpful. Plaintiff responds that her expert disclosures are sufficient, and Dr. Myer, Dr. DeMarcantonio, and Dr. Collar should be permitted to provide both lay opinion testimony regarding their treatment of T.K. and expert medical testimony.

Under Rule 26(a)(2), a party must disclose 'the identity of any [expert] witness it may use at trial' and other information that varies depending on the expert." *Izquierdo v. Certain Underwriters at Lloyd's London Subscribing to Pol'y No. BB014330K-3830*, 2021 WL 3197008, at *3 (11th Cir. July 29, 2021) (quoting Fed. R. Civ. P. 26(a)(2)(A)). Rule 26(a)(2)(B) requires a detailed expert report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(a)(2)(C) in turn subjects experts who were not retained for the purpose of providing expert testimony "to less-burdensome disclosure requirements[.]" *Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1289 (S.D. Fla. 2021). Instead of submitting a detailed expert report, such experts "instead … must submit only a written summary setting out 'the subject matter on which the witness is expected to present evidence' and 'a summary of the facts and opinions to which the witness is expected to testify.'" *Id.* (quoting Fed. R. Civ. P. 26(a)(2)(C)) (footnote call number omitted).

### i.      Rule 26(a)(2)(B)

The parties dispute whether Plaintiff's treating physicians constitute hybrid experts from whom full reports are required under Rule 26(a)(2)(B). Plaintiff lists all three of T.K.'s treating physicians—Dr. Charles M. Myer, III, Dr. Michael A. DeMarcantonio, and Dr. Ryan Collar—as hybrid experts. All three treating physicians are expected to testify as to the cause of T.K.'s injury, the treatment T.K. received for his injury, the long-term permanent effects of T.K.'s injury, and the need for future medical care. *See generally* ECF No. [35-1]. Defendant argues, in

the alternative, that Plaintiff's disclosures fail to comply with the less demanding disclosure requirements of Rule 26(a)(2)(C).

The Eleventh Circuit recently clarified that treating physicians are not required to produce expert reports under Rule 26(a)(2)(B) in *Cedant v. United States*, 75 F.4th 1314 (11th Cir. 2023).[7] In *Cedant*, the court reversed the district court's finding that Rule 26(a)(2)(B) applied to the plaintiff's disclosures regarding his treating physicians. *See generally id.* The court observed that "[d]istrict courts in our Circuit have taken a range of approaches to categorizing expert witnesses under Rule 26(a)(2)." *Id.* at 1321. One common approach determines whether the disclosure requirements of Rule 26(a)(2)(B) or Rule 26(a)(2)(C) apply based on "the Rule's discussion of retained versus non-retained witnesses." *Id.* (citing *Wal-Mart Stores E., L.P.*, 555 F. Supp. at 1290). Alternatively, "[o]thers have imposed requirements based on the topic of an expert's testimony." *Id.* (citing *Muzaffarr v. Ross Dress for Less, Inc.*, No. 12-61996-CIV, 2013 WL 3850848 (S.D. Fla. July 26, 2013)).

The Eleventh Circuit determined that the former is the proper approach, finding that "the *only* question presented by the Rule's text is whether the witness was retained as an expert or otherwise employed as described in Rule 26(a)(2)(B)." *Id.* at 1324 (footnote call number omitted). The court concluded that "neither category of expert witnesses defined in Rule 26(a)(2)—retained or non-retained—has to do with the subject of the expert testimony. Instead, the categories depend on when and why an expert witness was hired." *Id.* (footnote call numbers omitted). The plaintiff's treating physicians were thus not subject to Rule 26(a)(2)(B)'s disclosure requirements, as "[t]reating physicians … are first hired by their patients to treat rather than to testify." The district court accordingly erred when it concluded that Rule 26(a)(2)(B)

---

[7] Neither party discussed this case in their briefing. Plaintiff did bring this case to the Court's attention by filing a Notice of Supplemental Authority, however. *See* ECF No. [57].

applied to the plaintiff's physicians based on its finding "that caselaw required treating physicians to submit Rule 26(a)(2)(B) reports when testifying on causation." *Id.* at 1235 (citing *Muzaffarr*, 2013 WL 3850848, at *1).

Here, Plaintiff's hybrid experts are not subject to Rule 26(a)(2)(B)—and thus were not required to submit expert reports—for the same reasons set forth in *Cedant*. Plaintiff intends to provide testimony from his treating physicians on causation, among other topics. It is undisputed that Plaintiff's hybrid experts are treating physicians whose involvement in the case arose from treating T.K. rather than being retained to testify on Plaintiff's behalf. Defendant contends that Dr. Myer, Dr. DeMarcantonio, and Dr. Collar are nonetheless subject to Rule 26(a)(2)(B) because they intend to provide testimony beyond the scope of their treatment of T.K. on topics such as causation, prognosis, and the future implications of T.K.'s injury. That argument is foreclosed by *Cedant* because "[b]y default, non-retained witnesses like these only need to file Rule 26(a)(2)(C) disclosures." *Id.* Accordingly, "*Muzaffarr* and cases like it that assert otherwise are wrong on this point." *Id.* at 1325-26. Defendant's reliance on *Muzaffarr* and related authorities is therefore unavailing.[8]

The Court thus determines that Plaintiff's hybrid experts are subject to Rule 26(a)(2)(C)'s less onerous disclosure requirements. Plaintiff accordingly did not violate Rule 26(a)(2)(B) by failing to timely file expert reports for T.K.'s treating physicians. The Court proceeds to consider whether Plaintiff's disclosures for those hybrid experts comply with Rule 26(a)(2)(C).

---

[8] The Eleventh Circuit specifically found that the majority of the decisions relied on by Defendant were wrongly decided on this point. *See Cedant*, 75 F.4th at 1325-26 n.14 (citing *Brown v. Best Foods, a Div. of CPC Int'l, Inc.*, 169 F.R.D. 385, 388 (N.D. Ala. 1996); *Singletary v. Stops, Inc.*, No. 6:09-cv-1763-Orl-19KRS, 2010 WL 3517039, at *8 (M.D. Fla. Sept. 7, 2010); *In re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012); *Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-cv-01094-JEC, 2013 WL 1189493, at *12 (N.D. Ga. Mar. 21, 2013)).

> ii.      Rule 26(a)(2)(C)

As noted, Defendant alternatively argues that Plaintiff's expert disclosures also fail to satisfy Rule 26(a)(2)(C)'s less onerous disclosure requirements. *See* Fed. R. Civ. P. 26(a)(2)(C)(ii) (requiring a "summary of the facts and opinions to which the witness is expected to testify"). On August 22, 2023, Plaintiff made a "hybrid witness disclosure," listing Dr. Myer, Dr. DeMarcantonio, and Dr. Collar as treating physicians who will testify at trial. *See* ECF No. [35-1] ("Expert Witness Disclosure"). Thereafter, pursuant to the Court's Scheduling Order, the discovery period closed on September 19, 2023. ECF No. [12]. The first time Defendant objected to the sufficiency of the expert witness disclosure and medical reports Plaintiff provided was on February 14, 2023, when it filed the instant Motion to Strike, ECF No. [35].

Defendant argues that Plaintiff's disclosure is deficient under Rule 26(a)(2)(C) because the summaries Plaintiff provided for all three hybrid experts are "extremely generic and unhelpful" and those disclosures "fail to provide any indication of the facts that were relied upon by the doctors in formulating their causation opinions." Motion to Strike at 7. Defendant also contends that merely providing the medical records on which the expert testimony is based is inadequate. Plaintiff responds that the disclosures are "sufficient because they detail that Dr. Myer, Dr. DeMarcantonio, and Dr. Collar were treating physicians who would be offering their opinions based on their diagnosis and treatment of T.K., and by disclosing the subject matter of their opinions." ECF No. [46] at 6. Plaintiff also asserts that Defendant's failure to depose her hybrid experts renders any deficiencies in their disclosures harmless.

Plaintiff's Expert Witness Disclosure provides that Dr. Myer, Dr. DeMarcantonio and Dr. Collar intend to testify "as to the mechanics of Plaintiff's facial injury; causation, and treatment Plaintiff underwent in connection with his initial facial injury including the direct impact to

Plaintiff's nose which required surgical intervention." Expert Witness Disclosure at 2-3. All three treating physicians are expected to testify "as to the course of [T.K.'s] subsequent medical care and the long term/permanent effects of the injury." *Id.* The Expert Witness Disclosure further provides that the testimony will be based on the three physicians' review of "all of Plaintiff's medical records" as well as their "examination and treatment" of T.K. *Id.* Plaintiff also disclosed basic details about the treatment each physician provided, the casual relationship between T.K.'s injury and that treatment, and information on the medical necessity of those treatments. For example, Plaintiff disclosed the following specifics regarding Dr. DeMarcantonio's expected testimony:

> Dr. DeMarcantonio is expected to testify, based upon his examination and treatment of the minor Plaintiff T.K., that within reasonable medical probability T.K.'s fall onboard the CARNIVAL "VICTORY" on October 16, 2019, caused him to develop a deviated septum. He will also testify, based on his examination and treatment of T.K., that the septoplasty procedure performed on T.K. was necessary within reasonable medical probability to treat the deviated septum T.K. developed as a result of his fall onboard the "VICTORY."

*Id.*

Defendant argues that the Expert Witness Disclosure is fatally generic and fails to indicate the underlying facts on which the physicians relied, yet the authorities it provides in support feature substantial deficiencies that are not present here. In *Chappell v. Carnival Corp.*, No. 21-CV-23787, 2023 WL 3003806 (S.D. Fla. Apr. 18, 2023), for example, the court found that the plaintiff's expert disclosures were insufficient because they "merely list the *topics* of possible opinions which doctors might render without actually disclosing the *actual* opinion or tethering them to the specific facts of the case." *Id.*, at *14 (quoting *Worley v. Carnival Corp.*, No. 21-CIV-23501, 2023 WL 1840107 (S.D. Fla. Jan. 27, 2023), *report and recommendation*

*adopted*, No. 21-23501-CIV, 2023 WL 3016914 (S.D. Fla. Apr. 20, 2023) (emphasis in original)). *See also Heard v. Town of Camp Hill*, No. 316CV00856WKWGMB, 2017 WL 3622781 (M.D. Ala. Aug. 23, 2017) (finding Rule 26(a)(2)(C) was not satisfied where the plaintiff did "little more than sketch out the broad contours of the subjects about which his experts will testify.").

Here, Plaintiff's disclosures summarize each treating physician's specific opinion as to the cause of Plaintiff's facial injury as well as the particular treatment each physician provided. *See* Expert Witness Disclosure at 1-3. Unlike the expert disclosures in *Chappell*, *Worley*, and *Heard*, those summaries are neither a boilerplate recitation of possible topics nor a broad sketch of the subjects on which Plaintiff's hybrid experts will testify. Although Defendant is correct that those summaries do not identify the specific facts on which each treating physician's opinion is based, the Court finds that the Expert Witness Disclosure sufficiently describes the basis of each expert's causation and treatment testimony for Rule 26(a)(2)(C) purposes. As discussed, each summary identifies the specific treatment each physician administered to T.K., the cause of the facial injury, and notes that the expert opinion is based on a review of T.K.'s medical records as well as each physician's treatment of T.K.

However, Plaintiff's Expert Witness Disclosures regarding Dr. Myer and Dr. DeMarcantonio's expected testimony on T.K.'s *subsequent* medical care and the *long-term* effects of his injury fail to similarly comply with Rule 26(a)(2)(C). As noted, all three treating physicians are also expected to testify regarding the subsequent medical care T.K. requires as well as the long-term effects of his facial injury. *See generally* Expert Witness Disclosure. Plaintiff's summaries of Dr. Myer and Dr. DeMarcantonio's expert testimony fail to provide any specific details of their anticipated testimony regarding "the course of [T.K.'s] subsequent

medical care and the long-term permanent effects of the injury[,]" however. For example, other than noting that T.K.'s facial injury "requires additional surgical intervention[,]" Dr. DeMarcantonio's expert disclosure is silent as to what subsequent medical care is needed and fails to indicate the long-term effects of the injury. *Id.* at 2. Dr. Myer's expert disclosure similarly provides that Dr. Myer plans to testify on those topics but is silent as to the content of that testimony, as well as the facts on which the testimony is based. *Id.* at 1-2.

Those portions of Plaintiff's expert witness disclosures are inadequate, as they "merely list the *topics* of possible opinions which doctors might render without actually disclosing the *actual* opinion or tethering them to the specific facts of the case." *Chappell*, at *14 (citation omitted) (emphasis in original). Simply noting that those opinions will be based on a review of T.K.'s medical records, the physicians' treatment of T.K., and their knowledge and experience fails to satisfy Rule 26(a)(2)(C) absent additional specificity regarding the basis for those opinions.[9] *See Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d at 1299 (finding that a treating physicians expert disclosure's "vague allusions to 'experience, training, and care'" and reference to medical records failed to satisfy Rule 26(a)(2)(C)); *see also O'Brien v. NCL (Bahamas) Ltd.*, No. 16-23284-CIV, 2017 WL 8315925, at *6 (S.D. Fla. Aug. 25, 2017) (expert summary that disclosed the subject of expert testimony and generally referred to medical records "fail[ed] to provide sufficient factual information."). The Court therefore proceeds to consider whether the failure to adequately disclose was substantially justified or harmless under Rule 37(c)(1).

---

[9] Unlike the summaries of Dr. Myer and Dr. DeMarcantonio's anticipated testimony, Dr. Collar's summary provides specific details regarding his testimony on T.K.'s subsequent medical care and the long-term effects of his injury. *See* Expert Witness Disclosure at 3 ("Dr. Collar is expected to testify as to the effects the injuries from the accident will have upon the Plaintiff in his later years if Plaintiff does not undergo surgical intervention at this time. … He is also expected to testify within reasonable medical probability that the procedure presently scheduled for November 11, 2023 is medically necessary to treat T.K.'s respiratory symptoms."). The Court finds that this disclosure satisfies Rule 26(a)(2)(C)'s requirements.

### iii.      Rule 37(c)(1)

"If a party fails to properly disclose an expert witness under Rule 26(a), the party may not use the witness 'unless the failure was substantially justified or is harmless.'" *Izquierdo*, 2021 WL 3197008, at *4 (quoting Fed. R. Civ. P. 37(c)(1)). In making this determination, the Court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Torres v. First Transit, Inc.*, No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018) (citation omitted). Moreover, this Court has previously declined to exclude expert testimony where the defendant "had the opportunity to seek the intervention of the Court for [the plaintiff's] purported non-compliance before the discovery cut-off but failed to do so." *Torres*, 2018 WL 3729553, at *2.

First, the Eleventh Circuit has held that "[w]hen the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required." *Rivera v. Royal Caribbean Cruises Ltd.*, 711 F. App'x 952, 954 (11th Cir. 2017). The Court therefore finds that the first factor, the importance of the excluded testimony, weighs against exclusion of Plaintiff's hybrid experts.

Regarding the second factor, Plaintiff argues that her hybrid witness disclosure is sufficient per the Rule 26(a)(2)(C) requirements. Plaintiff asserts that she sufficiently disclosed the subject-matter and basis of the expert testimony, and any deficiencies in those disclosures are harmless because Defendant possesses all of T.K.'s medical records. The Court disagrees that providing medical records remedies the shortcomings in Plaintiff's expert disclosures. *See Jones v. Royal Caribbean Cruises, Ltd.*, No. 12-20322-CIV, 2013 WL 8695361, at *4 (S.D. Fla. Apr.

4, 2013) ("Allowing medical records to be submitted in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a 'summary.'" (quoting *Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11–cv–01094–JEC, 2013 WL 1189493, at *6 (N.D. Ga. Mar. 21, 2013) (internal quotation marks omitted)). That deficiency weighs in favor of exclusion yet the Court proceeds with the remaining factors.

For the third factor, "[p]rejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (citation omitted). As noted, Plaintiff timely provided Defendant with the names of Dr. Myer, Dr. DeMarcantonio and Dr. Collar and a summary of the topics on which they will offer testimony. *See generally* Expert Witness Disclosure. Defendant argues that it will be prejudiced because it will be unable to fully prepare for trial and that there will be a measure of surprise regarding the content of Dr. Myer, Dr. DeMarcantonio and Dr. Collar's testimony. However, Defendant had the opportunity to seek the intervention of the Court for Plaintiff's non-compliance before the discovery cut-off and failed to do so. Similarly, as Plaintiff argues, Defendant had an opportunity to depose all of Plaintiff's disclosed witnesses before the discovery deadline but declined to do so. Furthermore, there is no indication that Defendant attempted to confer with Plaintiff regarding the alleged deficiencies either before or after the filing deadline. The Court therefore finds that Defendant's claim of prejudice is unconvincing. *See Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d at 1300 ("Since [Wal-Mart] could have done much more—much earlier—to resolve the summary's deficiencies, its claimed prejudice rings hollow now.").

Fourth and finally, the Court declines to grant a continuance or reopen discovery with trial scheduled to begin in less than one month. The Court accordingly finds that portions of Plaintiff's expert witness disclosures fail to satisfy Rule 26(a)(C), but that failure is harmless. After balancing the four factors, the Court declines to strike Plaintiff's hybrid experts and will entertain any cumulative testimony at the time of trial.

### iv.    Dr. Myer's rebuttal report

Defendant next argues that Dr. Myer's rebuttal report should be stricken as improper. On September 13, 2023, Plaintiff timely filed Dr. Myer's rebuttal report containing an opinion as to the cause of Plaintiff's facial injury and related symptoms. *See* ECF No. [35-2]. Defendant argues that the causation opinion contained in Dr. Myer's rebuttal report is improper because it was not previously disclosed in Plaintiff's expert disclosures, and it is necessary to establish causation in Plaintiff's case-in-chief. Defendant contends that Dr. Myer's rebuttal report should accordingly be stricken as an untimely expert report masquerading as a rebuttal report. As discussed, however, Plaintiff timely disclosed Dr. Myer in her expert witness disclosures. Dr. Myer is a treating physician who is not required to prepare an expert report under Rule 26(a)(2)(B), and Plaintiff's summary of his testimony provides that Dr. Myer intends to testify "as to the mechanics of Plaintiff's facial injury [and] causation[,]" including that "T.K.'s fall onboard the CARNIVAL 'VICTORY' on October 16, 2019, caused him to develop a deviated septum." Expert Witness Disclosure at 1-2.

While Defendant accurately observes that establishing T.K.'s fall caused his facial injury is necessary to Plaintiff's case-in-chief, Defendant is incorrect that Plaintiff failed to timely or adequately disclose Dr. Myer's causation opinion. Dr. Myer's rebuttal report thus does not constitute "an initial expert report … improperly submitted under the guise of a rebuttal[.]" *Kroll*

*v. Carnival Corp.*, 2020 WL 4793444, at *5 (S.D. Fla. Aug. 17, 2020). Defendant's reliance on decisions excluding improper rebuttal reports on this basis is accordingly misplaced.[10] *See, e.g.*, *In re Trasylol Prods. Liab. Litig.*, 2010 WL 4065436 at *2 ("[R]ebuttal testimony should not be allowed if it logically belongs in the case-in-chief and goes to the case's central issue of causation."). Plaintiff therefore properly disclosed Dr. Myer's causation opinion with her initial expert disclosures and timely provided Dr. Myer's rebuttal report. The Court accordingly declines to strike Dr. Myer's rebuttal report as improper.

     **v.   *Daubert* Standard**

     Defendant next seeks to preclude Dr. Myer, Dr. DeMarcantonio, and Dr. Collar from offering causation testimony under *Daubert*. Defendant contends that all three hybrid witnesses intend to offer expert testimony and must be excluded from providing causation or prognosis testimony because those opinions were not rendered to a reasonable degree of medical certainty, failed to rule out alternative causes, and fail to specify the factual bases or methodology relied on in forming those opinions. Plaintiff responds that she appropriately disclosed that her hybrid witnesses intend to offer causation and prognosis opinions based on their treatment of T.K. and review of medical records and Defendant fails to demonstrate that the hybrid experts' causation and prognosis opinions suffer from any purported deficiencies.

     "[A] treating physician may testify as a lay witness regarding his observations and decisions during treatment of a patient[.]" *Wilson v. Taser Intern., Inc.*, 303 F. App'x 708, 712

---

[10] Defendant also urges that the Eleventh Circuit's rationale in *Flamingo South Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16 (11th Cir. 2012) applies to Dr. Myer's rebuttal report. The Court disagrees. In *Flamingo*, the Eleventh Circuit affirmed the district court's exclusion of an expert's declaration offered to rebut an opposing expert's opinion on the source of water damage. *Id.* at 26. The court found that this opinion should have been disclosed as part of the defendant's initial expert disclosures, and that there was no justification for the defendant's failure to do so. *Id.* As discussed, Plaintiff did not fail to disclose Dr. Myer's causation opinion as part of her initial expert disclosures. *Flamingo* is therefore distinguishable.

(11th Cir. 2008) (internal quotation marks omitted). However, "once the treating physician expresses an *opinion* unrelated to treatment which is based on scientific, technical, or other specialized knowledge, that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by *Daubert*." *Id.* (emphasis in original). Defendant contends that Plaintiff's hybrid experts intend to offer causation and prognosis opinion testimony that is based on their specialized knowledge rather than on their treatment of T.K. Defendant thus argues that Plaintiff's hybrid experts must comply with *Daubert's* requirements and fail to do so here.[11]

The record does not make clear which portions of Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's anticipated opinion testimony constitutes testimony based on their observations during treatment, and which portions constitute expert opinion testimony based not on their treatment but based on their specialized knowledge as physicians. As such, the extent to which those hybrid witnesses are "offering expert testimony for which the court must perform its essential gatekeeping function as required by *Daubert*[]" is thus also unclear. *Wilson*, 303 F. App'x at 712.

To the extent Defendant challenges Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's opinions under *Daubert* because Plaintiff's expert witness disclosure indicate that they will offer causation and prognosis expert testimony, the Court will assess the foundation laid for Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's opinions at trial. At this juncture, the Court relies only on the expert witness disclosure which states that all three treating physicians will offer testimony "based upon [their] knowledge, training and experience[,]" their treatment of T.K., and each

---

[11] Defendant specifically argues that Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's intended testimony on the cause and prognosis of Plaintiff's injury constitutes expert testimony because determining the cause and long-term effects of T.K.'s injury is unnecessary to T.K.'s treatment. *See* ECF No. [35-1] at 19-21. Plaintiff responds that those opinions were necessary to T.K.'s treatment and are thus properly admitted as lay opinion testimony. *See* ECF No. [46] at 9-12.

physician's testimony "will reference all of Plaintiff's medical records[.]" Expert Witness Disclosure at 2. Defendant is correct that Plaintiff's expert disclosures also provide that each treating physician will provide causation and prognosis testimony. *See generally id*. However, although Plaintiff's disclosure explains that each physician will testify as to "the mechanics of Plaintiff's facial injury [and] causation[]" as well as the "course of [T.K.'s] subsequent medical care and the long/term permanent effects of the injury[,]" it further provides that each physician "is expected to testify[] based upon his examination of treatment of the minor Plaintiff T.K.[]" and that their opinions are "within reasonable medical probability[.]" *See id.* at 2.

The Court accordingly finds the extent to which those opinions are subject to the *Daubert* standard is unclear, as is whether each opinion satisfies *Daubert*'s requirements. As such, the Court reserves ruling on the admissibility of Dr. Myer, Dr. DeMarcantonio and Dr. Collar's expert opinions until the trial. *In re Seroquel Products Liab. Litig.*, Nos. 06- MD-1769, 07-CV-15733, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009) (deferring ruling so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context).

Defendant has accordingly failed to show that Plaintiff's hybrid witnesses must be excluded from providing medical causation testimony under Rule 26(a)(2) or *Daubert*.

### B.   Motion *in Limine*

Defendant seeks to preclude Plaintiff from introducing the following evidence or testimony: (1) unrelated prior marine incidents or accidents; (2) the total billed amounts of T.K.'s medical expenses; (3) references to the Parties' financial resources; (4) comments or suggestions that the jury should "send a message" to Defendant; and (5) Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's cumulative or duplicative testimony. Plaintiff responds that she has no intention of introducing evidence or testimony regarding unrelated marine incidents, nor does she intend to

reference her limited financial resources or suggest that the jury should "send a message" to Defendant. Plaintiff argues that evidence of the total billed amounts of T.K.'s medical expenses is admissible, as is Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's anticipated testimony.

### i.   Unrelated prior marine incidents

Defendant argues that Plaintiff should be precluded from introducing any evidence of prior unrelated marine incidents or from making any reference to such incidents. Defendant contends that such evidence would only serve to "confuse the issues, mislead the jury, would be highly prejudicial, would inflame the jury, and would be an inappropriate attempt to appeal to the emotions of the jury." Motion *in Limine* at 3. Plaintiff responds that she is unaware of any media reports referencing T.K's fall, and she does not intend to introduce evidence of any unrelated prior marine incidents. Plaintiff thus argues that Defendant's Motion *in Limine* should be denied in the absence of any such evidence. Defendant replies that this evidence should nonetheless be excluded in light of Plaintiff's failure to rebut its arguments for exclusion.

Taking Plaintiff's representation that she does not intend to introduce unrelated prior marine incidents, the Motion is granted as to this issue.

### ii.   Total billed amount of medical expenses

Defendant next argues that Plaintiff should be precluded from introducing the total billed amount, as opposed to the total amount actually paid, for T.K.'s medical expenses. Defendant contends that permitting Plaintiff to introduce the total billed amounts of T.K.'s medical expenses would provide an improper windfall for Plaintiff. Defendant acknowledges that the Eleventh Circuit held that evidence of billed charges is admissible in *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295 (11th Cir. 2020). Defendant nonetheless "respectfully requests the Court to revisit this issue." Motion *in Limine* at 4. Plaintiff responds that *Higgs* squarely held that

the billed amounts of T.K.'s medical expenses are admissible, and that Defendant's Motion in Limine should therefore be denied. Defendant concedes the applicability of *Higgs* in reply but reserves the right to challenge *Higgs* on appeal.

As Plaintiff accurately observes, the Eleventh Circuit held in *Higgs* that "the appropriate measure of past medical expense damages in a maritime tort case is the amount determined to be reasonable by the jury upon its consideration of all relevant evidence, including the amount billed, the amount paid, and any expert testimony and other relevant evidence the parties may offer." *Higgs*, 969 F.3d at 1317. Consistent with *Higgs*, both the amount billed and amount paid for T.K.'s medical expenses are therefore admissible medical expenses. The Court declines Defendant's invitation to improperly revisit this controlling precedent.

> ### iii. References to the Parties' financial resources and to "teaching Defendant a lesson"

Defendant argues that Plaintiff should be precluded from referencing Plaintiff's limited financial resources, need for compensation, or from commenting that the jury should "send a message" to Defendant. Defendant contends that references to Plaintiff's limited financial resources or the need to "send Defendant a message" must be excluded because such statements are unfairly prejudicial and constitute reversible error. Plaintiff responds that it has no intent to reference Plaintiff's limited financial resources or any need to "send Defendant a message," nor does she intend to induce the Court to commit reversible error by admitting such evidence. The Court accepts Plaintiff's representation and the Motion is granted as to these issues.

> ### iv. Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's cumulative testimony

Defendant seeks to exclude Dr. DeMarcantonio's testimony as duplicative of Dr. Collar's anticipated testimony, and to exclude cumulative or overlapping testimony from Dr. Myer and Dr. Collar. Defendant contends that Dr. DeMarcantonio's testimony is duplicative because the

Plaintiff's disclosures and medical records indicate that Dr. DeMarcantonio's testimony will be identical to Dr. Collar's testimony. Defendant similarly argues that the Plaintiff's disclosures indicate that Dr. Myer and Dr. Collar intend to provide overlapping testimony, and that their testimony should accordingly be limited to their individual treatment of T.K. Plaintiff responds that each physician treated T.K. at different times and should be able to testify as to their care and treatment of T.K., and that excluding this testimony as cumulative is premature. Defendant replies that Plaintiff's expert witness disclosures and T.K.'s medical records nonetheless demonstrate that T.K.'s treating physicians intend to provide duplicative or cumulative testimony, and the cases Plaintiff provides in support for her position are distinguishable.

As a threshold matter, the Court has already determined that Dr. Myer, Dr. DeMarcantonio, and Dr. Collar may provide medical opinion testimony, subject to Defendant's objections at trial. The Court accordingly declines to limit the expert testimony of those physicians to their treatment of T.K. As discussed, the details of each physician's expert testimony are unclear. Furthermore, the Court agrees with Plaintiff that excluding portions of Dr. Myer, Dr. DeMarcantonio, and Dr. Collar's treatment testimony as cumulative is premature at this juncture. *Sampson v. Carnival Corp.*, No. 15-24339-CIV, 2016 WL 11547658 (S.D. Fla. Dec. 12, 2016) is particularly instructive. In *Sampson*, the court rejected the defendant's request to limit two of the plaintiff's treating physician's medical opinion testimony.[12] *Id.*, at *3. The defendant supported its position with "a small table that highlights the duplicative nature" of the physician's testimony based on the plaintiff's expert disclosures. *Id.*, at *2. The court found that it was unable to conclude that the two physicians would provide cumulative testimony "even if they discuss the same topics." *Id.* The court further observed that "[w]hile Defendant provides

---

[12] The parties agreed that the physicians should be permitted to testify as to their treatment of the plaintiff but disputed whether the physician's medical opinion testimony should be stricken as duplicative. *See id.*, at *2.

the Court with similarities between the two doctors, there is not enough support – at this time –
to exclude Dr. Harrington as an expert witness." *Id.* The court concluded that the defendant "may
re-raise its objections to the purportedly cumulative nature of Dr. Harrington's cumulative
testimony at trial – a compromise that numerous courts throughout the Eleventh Circuit have
adopted."[13] *Id.*, at *3 (quoting *Royal Bahamian Ass'n, Inc.*, 2010 WL 4225947, at *2) (internal
quotation marks omitted).

Defendant replies that *Sampson* is distinguishable because, unlike here, the court was
unable to conclude that the testimony would be cumulative, and the physicians at issue were
different specialties. Like *Sampson*, however, Defendant has shown that Dr. Myer, Dr.
DeMarcantonio, and Dr. Collar intend to discuss the same topics and provided similar treatment,
but that is insufficient to exclude portions of their testimony at this juncture. Moreover, unlike
*Sampson*, Defendant is seeking to exclude or limit the *treatment* testimony of T.K.'s treating
physicians rather than their medical opinion testimony.

As Plaintiff accurately observes, the record demonstrates that "each of these doctors
examined the Plaintiff at different times and performed different roles during the course of his
treatment." ECF No. 45 at 5. Defendant has not shown that their treatment testimony is
appropriately excluded as cumulative simply because Plaintiff's expert disclosures list the same

---

[13] *See also Sampson*, 2016 WL 11547658, at *3 (citing *Walker v. Werner Enter., Inc.*, 2008 WL
2816248, at *4 (M.D. Fla. May 14, 2008) ("Plaintiffs also move the Court for an order limiting
Defendants to presenting one accident reconstruction expert, as it would be a waste of time and needlessly
cumulative for Defendants to present the testimony of both Mr. Buchanan and Mr. Chewning ... It appears
that Mr. Buchanan and Mr. Chewning may offer cumulative testimony. If that happens, the Court will
preclude the cumulative testimony. Plaintiffs may re-raise their objections to the cumulative nature of
their testimony at the time of trial."); *Geico Cas. Co.*, 2007 WL 2412974, at *4 ("[T]he Court finds that
Defendants may call Ms. Knight and Mr. Rywant as expert witnesses, but notes that if it later determines
that such testimonies are in fact cumulative, the cumulative portions of their testimonies will be
excluded."); *Mendez v. Unitrin Direct Prop. & Cas. Ins. Co.*, 2007 WL 2696795, at *2 (M.D. Fla. Sept.
12, 2007) ("Upon consideration, the Court denies the motion, as it appears that the experts will be
testifying regarding different matters. However, to the extent that their testimony is cumulative, the Court
will entertain objections during trial.").

general topics for each treating physician, or because their medical records suggest that their treatment of T.K. at different points in time may be similar. For example, Defendant contends that Dr. DeMarcantonio's testimony is duplicative of Dr. Collar's testimony because T.K.'s medical records demonstrate that Dr. DeMarcantonio only briefly examined T.K. before referring him to Dr. Collar. *See* ECF No. [36-1] at 1. That does not establish that Dr. DeMarcantonio's treatment testimony is necessarily duplicative of Dr. Collar's testimony, merely because Dr. Collar's treatment of T.K. may have been more extensive.

Similarly, Defendant's observations that Dr. Collar did not participate in T.K.'s initial treatment does not justify limiting his testimony to his treatment of T.K. The same is true for Dr. Myer—the fact that T.K.'s medical records do not indicate that Dr. Myer intends to provide future care does not establish that Dr. Myer should be precluded from opining on the need for such care. While the Court appreciates the risk of cumulative testimony in the form of each treating physician testifying as to the other physician's treatment of T.K., limiting each physician to testifying only to their treatment of T.K. is nonetheless premature. The record reflects that Dr. Myer treated T.K. shortly after his accident while Dr. DeMarcantonio briefly treated T.K. on June 30, 2023, before referring him to Dr. Collar. *See* ECF No. [36-2], ECF No. [36-4] at 1. Dr. Collar subsequently treated T.K. beginning on August 11, 2023. ECF No. [36-3] at 1. Limiting each physician's testimony to only their individual treatment of T.K. may preclude each physician from providing helpful testimony as to how their particular treatment of T.K. comports with the prior or subsequent treatment of T.K. by the other physicians.

The testimony must be appropriately limited to avoid overlapping or cumulative testimony, yet the precise contours of those limitations are unclear on this record. The Court accordingly concludes that excluding portions of Dr. Myer and Dr. Collar's testimony as

cumulative is premature, as is excluding Dr. DeMarcantonio's testimony as duplicative. The Court will address Defendant's objections at trial.

### C.    Motion for Summary Judgment

Defendant moves for summary judgment on all three counts alleged by Plaintiff. As stated above, Defendant argues that it is entitled to summary judgment because (1) there is no evidence that Defendant proximately caused T.K. to slip and fall; (2) Plaintiff failed to provide any admissible medical causation evidence; (3) there is no evidence that the stage area constituted a dangerous condition; and (4) Defendant had no actual or constructive knowledge of any allegedly dangerous condition. *See generally* Motion for Summary Judgment. Plaintiff takes the opposing positions and responds that (1) there is substantial evidence that Defendant proximately caused T.K. to slip and fall; (2) Plaintiff's medical causation evidence is admissible; (3) there is substantial evidence that the stage area constituted a dangerous condition; and (4) there is substantial evidence that Defendant had actual or constructive notice of the dangerous condition. *See generally* ECF No. [48].

### i.    Maritime Law Principles

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara*, 920 F.3d 710, 720 (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's

negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Looney v. Metro. R.R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence."); *Miller v. NCL (Bah.) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959))), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797. "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident

constituted a dangerous condition." *Miller*, 2016 WL 4809347, at *4. Moreover,

> [t]o establish the owner of a ship in navigable waters breached its
> duty of care, a plaintiff must show: "(1) a dangerous condition
> existed; [and] (2) the vessel's operator had actual notice of the
> dangerous condition; or (3) if there was no actual notice, that
> [d]efendant had constructive notice of the dangerous condition for
> an interval of time sufficient to allow the vessel's operator to
> implement corrective measures." *Reinhardt v. Royal Caribbean
> Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D.
> Fla. Apr. 2, 2013) (alteration added; citations omitted).

*Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019).

### ii.    Proximate Cause

Defendant argues it is entitled to summary judgment because "the record is devoid of any <u>evidence</u> that the alleged negligence of Carnival (or any of its crewmembers) proximately caused Plaintiff's fall." Motion for Summary Judgment at 6 (emphasis in original). Defendant contends that there is no evidence that any water sprayed by Defendant's crewmember landed in the area where T.K. fell, nor is there any evidence that any water on the stage caused T.K. to slip and fall. Plaintiff responds that the record evidence establishes that there was water on the stage, and water caused T.K. to slip and fall. Defendant replies that the evidence on which Plaintiff relies fails to show that T.K.'s fall was caused by slipping on water sprayed onto the stage by Defendant's crewmember.

The Court finds that whether the crewmember's spraying of water caused T.K. to slip and fall constitutes a genuine dispute of material fact. Defendant asserts that whether water was sprayed onto the stage area and caused T.K. to slip and fall is speculative. However, that assertion is contradicted by the record. Plaintiff provided videos taken by another passenger depicting water being repeatedly sprayed into the crowd and over the stage area, and T.K. slipping on the stage after Defendant's crewmember sprayed water during the show. The second video specifically depicts the crewmember spraying into the crowd from the rear of the stage

area. ECF No. [40]. It is unclear where the water primarily landed and the extent to which water misted onto the stage. *Id.* However, the video clearly depicts a crewmember haphazardly spraying water into the crowd and water misting onto the stage. *Id.* The first video depicts T.K. running on the stage shortly after water was sprayed in the general vicinity of T.K. as well as T.K.'s slip and fall. ECF No. [37].

Defendant is correct that the video evidence does not clearly show T.K. slip on water sprayed by the crewmember. As discussed, however, the videos depict that water misted onto parts of the stage. T.K. testified in his deposition that he felt water on the stage area on the spot where he slipped. ECF No. [38-2] at 65. That testimony is supported by Defendant's accident report summary, which lists "Water on floor spray by Staff. Part of activity" as the "Immediate Cause" of T.K.'s injury. ECF No. [47-3] at 3. Moreover, when asked if Defendant disputes whether the stage was wet at the time of T.K.'s fall, Defendant's corporate representative testified as follows:

> THE WITNESS: I don't think that it was wet, but it was probably a little bit damp. It looked like – I mean, you can see in the video that was produced by the other guest that most of the water is actually sprayed on the audience, but I guess the argument could be made that some of the water fell onto the stage but you can't really see any of the water on the stage.
> But T.K. testified that he felt like it was damp. He felt like his foot – when he slipped, that he felt water on his leg.

ECF No. [38-4] at 10-11. As is consistent with the videos and T.K.'s deposition testimony, Defendant's corporate representative confirmed that water "probably" misted onto the stage prior to T.K.'s fall. *Id.* Whether water was on the stage area where T.K. slipped and fell is thus a genuine dispute of material fact rather than pure speculation.

Defendant also argues that even if water was on the stage area where T.K. fell, Plaintiff's argument that this caused T.K. to slip and fall lacks evidentiary support. Defendant accurately

observes that both Plaintiff and T.K. testified that they did not see any water hit the stage in the area where T.K. fell. ECF Nos. [38-1] at 154, [38-2] at 59. That testimony does not foreclose the issue as to whether there was water on that area of the stage in light of the record evidence discussed above, however. Defendant provides no support for finding that Plaintiff's claims fail because neither Plaintiff nor T.K. actually saw the crewmember spray water onto the stage in light of the videos and supporting deposition testimony. For its part, Plaintiff relies on *Haiser v. MSC Cruises (USA) Inc.*, No. 18-CV-60964-RS, 2019 WL 4693200 (S.D. Fla. Aug. 9, 2019). In *Haiser*, the court observed that although "it is true that Plaintiff has no first-hand knowledge of what caused her to fall. … Plaintiff's inability to herself 'identify whether there was a foreign substance of the floor prior to her [fall] … does not necessitate the conclusion that her theory of liability is entirely hypothetical.'" *Id.*, at *4 (quoting *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1093 (S.D. Fla. 2014) (alterations in original)). Defendant argues that *Haiser* is distinguishable because, unlike in *Haiser*, there is no evidence establishing that there was water in the area in where T.K. fell. As discussed, however, this argument is contradicted by the record.

Defendant's attempts to undermine the record evidence on which Plaintiff relies fares no better. Defendant argues that Plaintiff's reliance on Defendant's Security Watch Report, Defendant's email to the United States Coast Guard describing the slip and fall incident, and the Shipboard Meeting Minutes is misplaced. Defendant observes that all three documents note that Plaintiff informed Defendant that T.K. slipped on a wet floor rather than independently reporting that a wet floor was the cause of T.K.'s fall.[14] The fact that those documents simply report

---

[14] *See* ECF No. [47-1] at 1 ("The mother of injured minor guest [T.K.] … stated that … [T.K.] slipped on wet floor & fell forward on the stage hitting his face onto the floor."); ECF No. [47-2] at 1 ("When inquired, mother of injured minor [Plaintiff] … stated that today (10/16/2019) … while he [T.K.] was running on the stage, wearing tennis shoes, he apparently slipped on wet floor & fell forward on the

Plaintiff's description of the cause of T.K.'s injuries does not show that the record is devoid of evidence supporting a finding that water sprayed onto the stage caused T.K. to slip and fall, however. As discussed, Plaintiff also relies on video evidence depicting at least some water misting onto the stage area, Defendant's corporate representative's testimony that the stage was "probably" damp, and T.K.'s testimony that he felt moisture on the stage immediately after his fall.[15] This evidence demonstrates that whether the crewmember proximately caused T.K. to slip and fall is a genuine dispute of material fact. Defendant's attempts to portray Plaintiff's claims as purely speculative accordingly is without merit.

Moreover, Defendant's reliance on *Giles v. Winn-Dixie Montgomery, LLC*, 574 Fed. Appx. 892, 894 (11th Cir. 2014) is misplaced. In *Giles*, the Eleventh Circuit affirmed the district court's granting of summary judgment based on the lack of evidence that a supermarket's wet floor caused the plaintiff to slip and fall. *See generally id.* The plaintiffs argued that an employee mopped and dried the floor of a grocery store's checkout lane shortly before the plaintiffs entered the aisle. *Id.* at 894. The plaintiffs argued that the employee "rested the wet mop on the floor" where the plaintiffs stood while the mop continued to drip onto the aisle floor. *Id.* The plaintiffs argued that this water caused either the aisle floor or the injured plaintiff's shoes to become wet as she left the aisle, causing her to slip and fall when she later entered the drink aisle. *Id.* As the court observed, the plaintiffs relied "solely on video surveillance showing a

---

stage hitting his face onto the floor, thus sustain[ing] injury."); ECF No. [47-3] at 3 (observing that "[m]inor guest [T.K.] claimed that … he slipped on wet floor" during the show and describing the "Immediate Cause" of the accident as "Water on floor spray by Staff. Part of activity[.]").

[15] Defendant's observation that T.K. testified that he felt water on his arms when he fell forward rather than feeling water on the stage in the exact spot where the slipped fails to show that this evidence cannot support a finding that the crewmember proximately caused T.K. to fall by spraying water onto the stage. As discussed, T.K.'s testimony that he felt water on the stage is not the sole source of evidence that the stage may have been wet at the time of his fall. Furthermore, establishing that the stage area where T.K. fell was wet can support finding that the spot where T.K. slipped also was wet at the time of his fall.

Winn-Dixie employee mopping the floor of the checkout lane and drying the floor with a paper towel shortly before Plaintiffs entered the lane." *Id.*

The court found that the plaintiffs' contention that the injured plaintiff "stepped in a wet spot on the floor of the checkout lane is entirely speculative[]" considering the plaintiffs "submitted no other evidence or testimony that the floor of the checkout lane was in fact wet or that [the plaintiff's] 'Crocs'-brand shoes felt or sounded wet at any time before her fall." *Id.* The court also determined that the plaintiffs' theory that the injured plaintiff's Crocs "could have absorbed the water from the checkout lane floor (like sponges) and then 'could have' released the water when [the injured plaintiff] was in the drink aisle … causing her to slip and fall" was unduly speculative and thus failed to "demonstrate[] a causal connection between the alleged wet floor and [the injured plaintiff's] ultimate fall."[16] *Id.* at 894-95.

Unlike in *Giles*, Plaintiff does not solely rely on video testimony to support an attenuated theory of causation leading to T.K.'s injury. As discussed, the videos on which Plaintiff relies depict at least some water misting onto the stage, T.K. subsequently slipping and falling, and are further supported by deposition testimony. Plaintiff's theory of proximate causation is thus not entirely speculative. Furthermore, Plaintiff's theory that the crewmember spraying water into the crowd and partially onto the stage area leading to T.K.'s fall is distinguishable from the theory rejected in *Giles*. As noted, the plaintiffs in *Giles* argued that a single video of an employee mopping and subsequently drying the checkout aisle established that the mop dripped onto the floor, that the floor became wet, that water was absorbed by the injured plaintiff's shoes, causing the injured plaintiff to subsequently fall in another aisle. Here, Plaintiff's argument that the stage

---

[16] The court further observed that the plaintiffs' absorption theory proving such a theory of absorption and delayed release of water "would involve scientific, technical or specialized knowledge outside the scope of a layperson's understanding and, thus, would require expert testimony[]" yet the plaintiffs provided no such expert testimony. *Id.* at 895.

area where T.K. fell was wet is supported by video evidence depicting T.K.'s fall as well as water misting onto parts of the stage in addition to supporting deposition testimony. *Giles* accordingly does not support finding that Defendant is entitled to summary judgment on all three of Plaintiff's claims.[17] The Court accordingly finds that whether Defendant's crewmember spraying water onto the stage caused T.K. to slip and fall constitutes a genuine dispute of material fact. Defendant is therefore not entitled to summary judgment on this basis.

### iii.    Medical Causation

Defendant argues that it is entitled to summary judgment on all three of Plaintiff's claims because Plaintiff failed to provide any admissible evidence demonstrating that T.K.'s slip and fall caused his facial injury. As a threshold matter, Defendant is correct that evidence of T.K.'s non-observable injuries—namely, his deviated symptoms and related complications—may require expert testimony to establish causation. *See, e.g.*, *Rivera v. Royal Caribbean Cruises Ltd.*, 711 F. App'x 952, 954 (11th Cir. 2017) ("When the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required."); *Landivar v. Celebrity Cruises, Inc.*, 584 F. Supp. 3d 1150, 1159-60 (S.D. Fla. Feb. 8, 2022) ("Only expert testimony can support a finding of medical causation if the causal connection between the breach and the harm is not readily observable or susceptible to evaluation by lay persons."). Defendant has not demonstrated that Plaintiff fails to provide any admissible medical causation testimony, however. As discussed above, Defendant

---

[17] Defendant also relies on *Holland v. Carnival*, 50 F.4th 1093, 1094 (11th Cir. 2022) and *Taiariol v. MSC Crociere, S.A.*, 2016 WL 1428942 (S.D. Fla. Apr. 12, 2016) to argue that Plaintiff's inability to establish proximate cause entitles it to summary judgment. Neither case supports finding that Defendant is entitled to summary judgment on this basis, however. *See Holland*, 50. 4ᵗʰ at 1096-97 (finding the plaintiff's conclusory allegations failed to plausibly allege that the defendant was negligent); *Taiarol*, 2016 WL 1428942, at *4 (finding that the defendant was entitled to summary judgment because it had no duty to warn the plaintiff of an open and obvious dangerous condition, and because there was no evidence that the defendant had notice of that dangerous condition).

has not established that Dr. Myer, Dr. DeMarcantonio and Dr. Collar's opinion testimony is inadmissible to establish medical causation. Defendant is accordingly not entitled to summary judgment on this basis.

      **iv.   Dangerous Condition**

Defendant argues that it is entitled to judgment on Counts I and II of Plaintiff's Complaint because "the record is devoid of any evidence that there was a dangerous condition in the area where T.K. fell at the time that he fell." Motion at 9. In support, Defendant reiterates its argument that there is no evidence that the stage floor was wet, or that the wet floor caused T.K. to slip and fall. Defendant also argues that even if the stage area where T.K. slipped was wet, Plaintiff has failed to provide any evidence showing that the stage area constituted a dangerous condition. Plaintiff responds that the record evidence shows that the stage area where T.K. slipped was wet, and Defendant's crewmember directing T.K. to run on the wet stage area created a dangerous condition leading to his injury. Defendant replies that Plaintiff's argument fails under controlling law, and due to the absence of supporting evidence.

The Court has already determined that whether T.K. slipped and fell due to the stage being wet constitutes a genuine dispute of material fact. Defendant is accordingly not entitled to summary judgment due to a lack of evidence on those factual issues. The Court must instead determine whether the crewmember's spraying water onto the stage area could have created an unreasonably dangerous condition under applicable law.

"A dangerous condition is one that is not apparent and obvious to a passenger." *Miller v. NCL (Bahamas) Ltd.*, No. 1:15-CV-22254-UU, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016), *aff'd*, 679 F. App'x 981 (11th Cir. 2017) (quoting *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2009)). Defendant argues that even if the stage area

was wet at the time of T.K.'s fall, "the presence of water on a floor alone does not give rise to a presumption that the wet floor was unreasonably slippery or otherwise constituted a dangerous condition." Motion for Summary Judgment at 9.

Defendant is correct that "[t]he mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller*, 2016 WL 4809347, at *4 (citing *Isbell*, 462 F. Supp. 2d at 1237). Plaintiff does not argue that the fact that T.K. slipped and fell on the stage area itself demonstrates that the stage area constituted a dangerous condition, however. Instead, Plaintiff argues that Defendant's crewmembers created a dangerous condition by spraying water onto the stage area and subsequently directing T.K. to run on that area of the stage. *See generally* Complaint. Defendant's reliance on *Miller, D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794 (11th Cir. 2019), and *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-CV-22105-UU, 2013 WL 11261341 (S.D. Fla. Apr. 2, 2013) for this general negligence principle is thus inapposite.

Defendant further argues that "in order to survive summary judgment, Plaintiff must point to record evidence that establishes that the deck in the area where Plaintiff fell was unreasonably slippery when wet." Motion for Summary Judgment at 10. In support, Defendant relies on *Luther v. Carnival Corp.*, 99 F. Supp. 3d 1368, 1371 (S.D. Fla. 2015), *Wish v. MSC Crociere S.A., and MSC Cruises (USA) Inc.*, 2008 WL 5137149 (S.D. Fla. Nov. 24, 2008), and this Court's decision in *Price v. Carnival Cruise Lines*, 2022 WL 2713727 (S.D. Fla. July 13, 2022). Plaintiff responds that those decisions are distinguishable, and the undisputed evidence shows that the water sprayed onto the stage area constituted a dangerous condition.

As Plaintiff accurately observes, the decisions Defendant relies upon featured a dangerous condition that was found to be open and obvious, as well as evidentiary records that

lacked additional evidence making that open and obvious condition unreasonably unsafe. In *Luther*, for instance, the court dismissed the plaintiff's negligence claims against Defendant based on the plaintiff slipping and falling on a wet deck after it rained. *Luther*, 99 F. Supp. 3d at 1371. The court found that Defendant was entitled to judgment after determining that plaintiff's "testimony makes clear that she was aware of the wet deck, and that the danger was open and obvious[]" and after finding that "there are no allegations—and certainly no record facts showing—that the deck was unusually, extremely, or unreasonably slippery" or any evidence of prior incidents. *Id.* In *Wish*, the court similarly found that "there is simply no evidence showing that the rainwater had been sitting on the pool deck for an unreasonable amount of time or that Defendant knew there was rainwater on the deck and acted negligently in failing to remove it." *Id.*, at *2. The court thus concluded that "while an unfortunate accident occurred, Defendant was not negligent and thus cannot be held liable." *Id.*, at *3. In *Price*, this Court stated that "courts have granted summary judgment in favor of defendants when plaintiffs have failed to present any expert testimony that there was a violation of safety standards or a product defect that created a dangerous condition." *Price* 2022 WL 2713727, at *7 (S.D. Fla. July 13, 2022) (citing *McClanahan v. NCL (Bahamas) Ltd.*, 281 F. Supp. 3d 1350, 1354 (S.D. Fla. 2017); *Penick v. Harbor Freight Tools, USA, Inc.*, No. 19-CV-23134, 2020 WL 6581606, at *5 (S.D. Fla. Nov. 10, 2020)). In *Price*, the Court granted summary judgment in favor of Defendant after determining that there was no evidence that the clamp the plaintiff tripped over constituted a dangerous condition, or that this condition was not open and obvious. *Id.*, at *7-8.

Unlike the decisions in *Luther*, *Wish*, and *Price*, Plaintiff's negligence claims are not based on Defendant's failure to rectify an open and obvious dangerous condition. Moreover, as discussed, Plaintiff has provided evidence supporting her contention that the crewmember

sprayed water onto the stage area where T.K. slipped and fell. Those decisions are thus inapposite, as Plaintiff does not argue that the wet stage area was an open and obvious condition, nor that the claims are based on a product defect or a failure to maintain the stage area. Instead, Plaintiff contends that a dangerous condition was created by a crewmember spraying water onto the stage area coupled with another crewmember instructing T.K. to run across that stage area shortly afterward. Plaintiff's argument is supported by record evidence indicating that the stage area may have been wet at the time of T.K.'s fall. Defendant's argument that the absence of evidence of water on the stage area where T.K. slipped and fell demonstrates that there was no dangerous condition is thus foreclosed by the Court's determination that whether the stage area was wet constitutes a genuine dispute of material fact.

Furthermore, Plaintiff provides case law that supports denial of summary judgment where, as here, there is record evidence creating a genuine dispute of material fact as to whether the wet surface constituted a dangerous condition. The court's finding in *Haiser v. MSC Cruises (USA) Inc.*, No. 18-CV-60964-RS, 2019 WL 4693200 (S.D. Fla. Aug. 9, 2019) is particularly instructive. In *Haiser*, the court found that whether a pool of unknown liquid constituted a dangerous condition was a genuine dispute of material fact. The plaintiff was unable to identify the substance on which she slipped and never saw the pool of liquid that she purportedly slipped on. *Id.*, at *4. The court nonetheless found that the testimony from another passenger that he observed a pool of water in the bar area where the plaintiff fell—and subsequently saw the plaintiff slip and fall near the area where he observed the puddle of water—sufficiently supported her claims. *Id.* This testimony was also supported by photographic evidence of the plaintiff lying on the floor after falling, yet the record did not reveal "whether liquid remained on the floor, or if someone had cleaned it up" before the plaintiff's fall, and the plaintiff was herself

unable to testify as to what she slipped on. *Id.* The court concluded that "[t]here is enough evidence in the record to show that the floor could have been wet and from which a reasonable factfinder could conclude that a dangerous condition existed[]" despite these evidentiary gaps. *Id.*, at *5.

As in *Haiser*, Plaintiff supports her negligence claims with testimony that the stage area may have been wet when T.K. slipped and fell, as well as documentary evidence—here, a video taken by another passenger—supporting her contention that T.K. fell after slipping on water sprayed onto the stage area. Consistent with *Haiser*, the Court finds that whether water sprayed onto the stage area created a dangerous condition constitutes a genuine dispute of material fact. Like *Haiser*, "Plaintiff's inability to herself 'identify whether there was a foreign substance on the floor prior to her [fall] ... does not necessitate the conclusion that her theory of liability is entirely hypothetical.'" *Id.*, at *4 (quoting *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1093 (S.D. Fla. 2014)). As discussed above, the Court finds that whether water was in fact sprayed onto the stage area constitutes a genuine dispute of material fact, as does whether this water caused T.K. to slip and fall. That same record evidence establishes that whether the wet stage area constituted dangerous condition is also a genuine dispute of material fact.

Defendant's remaining arguments in favor of summary judgment lack merit. As discussed, the decisions on which it relies feature an open and obvious dangerous condition, an argument not made here. Moreover, Defendant provides no support for its argument that Plaintiff must further demonstrate that the stage area was unreasonably slippery where, as here, Plaintiff's contention that T.K. slipped and fell on a non-obvious hazard—the wet stage area—is supported by testimony and video evidence. That evidence supports that the stage area may have been

unreasonably slippery when wet, particularly for a nine-year-old running across it shortly thereafter.

Defendant's remaining argument that it is entitled to judgment because Plaintiff failed to provide expert testimony on whether the floor was unreasonably slippery when wet is rejected. Defendant argues that the Eleventh Circuit's decisions in *Giles v. Winn-Dixie Montgomery, LLC*, 574 Fed. Appx. at 895, *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275 (11th Cir. 2015), and *Rosenfeld v. Oceania Cruises, Inc.*, 654 F. 3d 1190 (11th Cir. 2011) stand for the proposition that expert testimony is required to determine whether a surface is unreasonably slippery when wet. Those authorities do not support such a broad proposition, however. Instead, those cases instruct that "[i]n slip and fall cases involving an allegedly dangerous or defective surface, the question of liability sometimes turns on (or is at least informed by) the surface's coefficient of friction (COF), which is, in layman's terms, 'the degree of slip resistance.'" *Sorrels*, 796 F.3d at 1278-79 (quoting *Mihailovich v. Laatsch,* 359 F.3d 892, 896, 921 n. 2 (7th Cir. 2004)). While it is true that whether the stage area constituted a dangerous condition when wet could be "informed by[]" its surface coefficient of friction, those authorities do not support granting summary judgment in the absence of such expert testimony. *Id.* Those decisions instead instruct that expert testimony on is only *necessary* to establish liability when the plaintiff's theory of negligence "involve[s] scientific, technical, or specialized knowledge outside of the scope of a laypersons's understanding and, thus, would require expert testimony." *Giles*, 574 Fed. App'x at 895.

Here, Plaintiff argues that spraying water onto a stage made that stage slippery when wet, and that T.K. subsequently slipped and fell while running on the slippery stage area. As discussed above, Defendant's reliance on *Giles* is thus inapposite, as the plaintiff there relied on "a theory of absorption and delayed release of water" outside of the scope of a laymen's

understanding of basic cause and effect. *Id.* Similarly, in *Rosenfeld* and *Sorrels*, the plaintiffs'
primary theories of liability were based on the defendant's negligent selection of a surface
material that became unreasonably slippery when wet, *Rosenfeld*, 654 F.3d at 1192-93, or for
failing to maintain a surface leading to it becoming unreasonably slippery when wet. *Sorrels*, 706
F.3d at 1281. In contrast, Plaintiff's theory of negligence is based on the crewmembers spraying
water onto a stage area and directing T.K. to run across it shortly after, thereby creating a
dangerous condition. Establishing liability therefore does not require expert testimony that
Defendant negligently selected the flooring for the stage area, or that it invariably becomes
unreasonably slippery when wet.

In sum, although Defendant is correct that the Eleventh Circuit has "held that expert
testimony relating to the COF of a flooring surface can be helpful to a jury in a slip and fall
case[,]" summary judgment is not warranted due to the absence of expert testimony on the stage
area's coefficient of friction. *Id.* at 1281-82 (citing *Rosenfeld*, 654 F.3d at 1193). The Court thus
concludes that whether the stage area constituted a dangerous condition at the time of T.K.'s fall
constitutes a genuine dispute of material fact.

<strong>v.     Notice of Dangerous Condition</strong>

Defendant argues that it is entitled to summary judgment on Counts I and II because there
is no evidence that Defendant had actual or constructive notice that the stage area constituted a
dangerous condition. Defendant contends that the record evidence conversely establishes that no
similar slip and fall incidents occurred in the three years prior to T.K.'s accident, and that it is
accordingly entitled to judgment. Plaintiff responds that the record demonstrates that
Defendant's crewmembers had actual or constructive notice because they knew or should have
known that spraying water across the stage area and subsequently directing T.K. to run across the

stage area created a dangerous condition. Plaintiff argues that evidence of prior incidents is thus unnecessary. Defendant replies that the decisions on which Plaintiff relies are distinguishable, and that there is no evidence that Defendant knew or should have known that water on the stage constitutes a dangerous condition.

"Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bah. Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)) (citing *Keefe*, 867 F.2d at 1322; *Rodgers v. Costa Crociere, S.P.A.*, No. 08-CV-60233, 2009 WL 10666976, at *3 (S.D. Fla. July 6, 2009)). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)).

Plaintiff argues that Defendant's crewmembers spraying water onto the stage area and subsequently directing T.K. to run across the stage area shows that Defendant had actual notice of this dangerous condition. Alternatively, Plaintiff contends that the presence of those crewmembers demonstrates that Defendant had constructive notice of a dangerous condition yet failed to employ corrective measures. As a threshold matter, Plaintiff is correct that evidence of prior incidents is unnecessary to establish that Defendant had actual or constructive notice. In *Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189 (S.D. Fla. 2016), for example, the court rejected the defendant's argument that the plaintiff cannot prove constructive notice in the absence of substantially similar accidents. *Id.* at 1192. As *Thomas* thoughtfully explains:

> [E]vidence of substantially similar accidents is but one of the ways
> a plaintiff may prove a defendant's constructive notice of a
> defective condition. *See, e.g., Jones v. Otis Elevator Co.,* 861 F.2d
> 655, 661-62 (11th Cir. 1988) ("We have held that 'evidence of
> similar accidents *might be* relevant to the defendant's notice ...')
> (quoting *Ramos v. Liberty Mutual Ins. Co.,* 615 F.2d 334, 338 (5th
> Cir. 1980)) (emphasis added); *Doudeau v. Target Corp.,* 572 Fed.
> App'x 970, 972 (11th Cir. 2014) (testimony from defendant's
> employee that area of slip and fall was a known danger when it
> rained created an issue of fact regarding defendant's notice);
> *Garcia v. Target Corp.,* No. 13–cv–60308, 2014 WL 505151, at *3
> (S.D. Fla. Feb. 7, 2014) (witness testimony regarding footprints in
> water precluded summary judgment on defendant store's notice of
> a puddle).[1] In premises liability cases, for example, a plaintiff may
> prove constructive notice if he shows that a dangerous condition
> existed on the floor for a sufficient length of time, which Florida
> courts have found to be 15-20 minutes. *Hill v. Ross Dress for Less,
> Inc.,* No. 12–23368, 2013 WL 6190435, at *4 (S.D. Fla. Nov. 26,
> 2014) (citations omitted).

*Id.* at 1192-93. Defendant nonetheless argues that those decisions are distinguishable

because, unlike here, they featured evidence showing that the defendant's employees were aware

of a dangerous condition before an accident occurred. In support, Defendant reiterates that the

fact its crewmember sprayed water into the air does not establish that any crewmember knew

that there was water on the stage in the specific area where T.K. fell at any time prior to when he

fell, nor does it establish that Defendant was aware doing so created a dangerous condition. As

discussed, however, whether water was sprayed onto the stage area is a genuine dispute of

material fact, as is whether doing so created a dangerous condition.

The same is true as to whether Defendant had actual or constructive notice that spraying

the water and subsequently directing T.K. to run across the stage constitutes a dangerous

condition. As in *Thomas*, *Doudeau*, *Garcia*, and *Hill*, Plaintiff points to evidence supporting its

argument that Defendant knew or should have known that spraying water into the crowd may

make the stage area wet, and that subsequently directing T.K. to run across the stage thus created a dangerous condition. Here, as discussed, Plaintiff does so through video evidence and testimony supporting her argument that Defendant's crewmembers sprayed water across the stage area and into the crowd and directed T.K. to run across the stage area. That evidence can support a finding that Defendant had actual notice of this dangerous condition. It also can support a finding that Defendant had constructive notice, although the amount of time during which the stage area was wet is unclear, as is whether the crewmembers knew or should have known that corrective measures were necessary.

Defendant's reliance on *Jackson v. NCL America, LLC,* 730 Fed. Appx. 786 (11th Cir. 2018) is thus misplaced. In *Jackson,* the court found that the defendant lacked actual or constructive notice that an onion peel constituted a dangerous condition regardless of whether a crewmember "dropped the onion pool and created the dangerous condition[.]" *Id.* at 789. The court explained that there was no evidence of actual notice, and that imputing notice to the defendant was inappropriate in the absence of additional circumstantial evidence that the defendant's crewmembers created the dangerous condition. *Id.* Unlike *Jackson,* Plaintiff's argument that Defendant's crewmembers created the dangerous condition is supported by evidence, namely, videos showing the crewmembers spraying water onto the stage and directing T.K. to run across that stage. This evidence shows that the crewmembers created the allegedly dangerous condition in question. *Jackson* is accordingly distinguishable, as Defendant may have had actual or constructive notice that its crewmembers' actions created a dangerous condition.

Defendant's final argument that it lacked notice that spraying water onto the stage area creates a dangerous condition similarly falls short. Although Defendant is correct that "[k]nowledge that a condition exists does not imply knowledge that the condition is

dangerous[,]" *Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 908 (11th Cir. 2017), this general principle does not establish that Defendant is entitled to judgment. Defendant argues that it lacked notice that its crewmembers' activities created a dangerous condition due to the absence of prior slip and fall incidents during the thousands of Stage Show performances prior to T.K.'s slip and fall. That evidence is relevant to Defendants argument that it did not know, nor should it have known, that its crewmembers' actions created a dangerous condition. It does not establish that summary judgment is warranted on Counts I and II, however.

The absence of prior incidents does not show that Defendant lacked actual or constructive notice that its crewmembers spraying water into the crowd from the rear of the stage and subsequently directing T.K. to run on that stage may create a dangerous condition. Pointing to thousands of prior stage performances does not establish that Defendant did not know, or had no reason to know, that its crewmembers spraying water and directing T.K. to run may have created a dangerous condition. The manner in which Defendant's crewmembers sprayed water during those prior performances is unknown, as is whether and to what extent the crewmembers directed minors to run across the stage in a manner similar to T.K. The record demonstrates, at minimum, that Defendant had actual notice that its crewmembers would spray water during the interactive Stage Show and invite minors to participate in the show. Whether Defendant knew or should have known that its crewmembers created a dangerous condition by conducting the Stage Show in this manner is therefore a genuine dispute of material fact.

The Court therefore concludes that Defendant is not entitled to summary judgment on Plaintiff's claims.

## V.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Strike, **ECF No. [35]**, is **DENIED**.

2.  Defendant's Motion *in Limine*, **ECF No. [36]**, is **GRANTED IN PART AND DENIED IN PART**.

3.  Defendant's Motion for Summary Judgment, **ECF No. [39]**, is **DENIED**. Plaintiff's claims shall proceed against Defendant.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 22, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record